*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DIXON/KERSE, Minors.

UNPUBLISHED
February 06, 2026
10:17 AM

No. 376742
Wayne Circuit Court
Family Division
LC No. 2024-000080-NA

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her minor children, NDD and MOK.[1] On appeal, respondent contends that termination of her parental rights was not in the children's best interests because their placement with a relative weighed against termination and the trial court failed to consider guardianship as an alternative to termination of her parental rights. We vacate the termination order and remand for further consideration of the best-interest issue in light of the children's relative placement.

## I. FACTUAL BACKGROUND

This case arises out of the termination of respondent's parental rights after she was convicted of assault with intent to murder, MCL 750.83. On December 13, 2023, after an argument between MOK's father and respondent in a parking lot, MOK's father and RK, MOK's half-brother, began to walk away in an attempt to leave. Respondent chased MOK's father and RK in her vehicle and ran over them. Respondent's vehicle dragged RK, who was seriously injured.

Respondent was charged with two counts of assault with intent to murder, assault with intent to do great bodily harm less than murder, MCL 750.84, and assault with a dangerous weapon, MCL 750.82, along with failure to stop at the scene of an accident resulting in serious impairment of a body function, MCL 257.617(2), reckless driving causing serious impairment of

---

[1] Because NDD's father is not a party to this appeal, we refer to mother as respondent.

a body function, MCL 257.626(3), and domestic violence, MCL 750.81(2). Respondent was detained pending trial.

Under a safety plan, the children were placed in the care of their maternal grandmother. A few weeks later, NDD was taken to Children's Hospital. When NDD was ready to be released from the hospital, his grandmother and father refused to pick him up. NDD remained hospitalized until the trial court ordered NDD's removal from respondent's care and into an appropriate foster-care placement.

The Department of Health and Human Services petitioned to terminate respondent's parental rights to the children at the initial disposition.

As to the criminal charges, respondent pleaded *nolo contendere* to one count of assault with intent to murder. Respondent was sentenced to 15 to 30 years' imprisonment.

After 16 different placements from January 2024 until August 2024, NDD was placed in a qualified residential treatment program (QRTP). MOK remained in his grandmother's care.

On April 4, 2025, respondent entered a no-contest plea to the legal basis for jurisdiction and statutory grounds for termination. A best-interest hearing was held on May 30, 2025. Four witnesses testified—the Children's Protective Services' investigator, NDD's family therapist and foster care worker while he was at the QRTP, and NDD's foster care worker from January 2024 through August 2024. The trial court admitted the best-interest assessment, which recommended a permanency plan that did not include reunification with respondent. Because of the children's bond with mother and the grandmother's preference for guardianship over adoption, the L-GAL argued against termination and in favor of a guardianship with grandmother. Respondent's attorney and her guardian ad litem also argued for guardianship with grandmother. The trial court concluded that termination of respondent's parental rights was in the children's best interests.

## II. BEST INTERESTS

Respondent argues that the trial court erred in terminating her parental rights because termination was not in the children's best interests. In light of the trial court's failure to address the children's placement with a relative and weigh it against termination, we vacate the termination order and remand.[2]

---

[2] We acknowledge that *after* the trial court terminated respondent's parental rights to NDD and MOK, the trial court stated that grandmother could decide whether she wanted to pursue a guardianship. However, the trial court did not expressly contemplate on the record whether a relative placement with grandmother in a guardianship nonetheless warranted termination of respondent's parental rights. Additionally, NDD's former caseworker testified that grandmother wanted a guardianship of NDD but adoption of MOK. Curiously, grandmother was not called to testify regarding her wishes with regard to adoption or guardianship of each child. And although the best-interest stage focuses on the child's interest, no caseworker for MOK was called to testify

## A. STANDARD OF REVIEW

This Court reviews the trial court's findings that termination is in a child's best interests for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

## B. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (quotation marks and citation omitted). At the best-interest stage, the trial court's focus is on the child, not the parent. *In re Moss*, 301 Mich App at 89.

Several factors weighed in favor of terminating respondent's parental rights. Respondent had a history of domestic violence, including the incident underlying her criminal conviction. *In re Olive/Metts*, 297 Mich App at 41-42. Additionally, respondent's parenting ability was concerning. *Id.* Respondent admitted that she abused cocaine and alcohol. And, according to NDD, respondent used to call him names and took him to Children's Hospital when he did not need to go because she wanted him out of the house. Respondent's treatment of NDD was probative of how she might treat MOK. *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021) (Treatment of one child is probative of how a respondent may treat their other children.) Also, although RK was not respondent's child, respondent's treatment of RK might be indicative of her treatment of these children. *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020).

Further, respondent is unable to personally care for her children because she is serving a minimum 15-year prison sentence. But respondent asserts that she provided proper care and

---

regarding his individualized best interest. *In re Moss*, 301 Mich App at 89. There was a substantial age gap between NDD and MOK. Additionally, NDD had different health concerns than MOK. Because of these differences, the trial court should have considered the needs of both children separately.

custody for the children by having them placed with grandmother. "Michigan traditionally permits a parent to achieve proper care and custody through placement with a relative." *In re Mason*, 486 Mich 142, 161 n 11; 782 NW2d 747 (2010). Although respondent's placement of MOK with grandmother through a safety plan could demonstrate respondent's proper care for MOK, NDD was left without any proper care when grandmother refused to pick NDD up from the hospital after NDD was placed with her via the safety plan. In fact, NDD stayed at the hospital for over a week even though he was ready to be discharged on the day he arrived. That respondent was unable to care for NDD herself or provide other care for him via grandmother supported that it was in NDD's best interests to terminate respondent's parental rights. *In re Olive/Metts*, 297 Mich App at 41-42.

Furthermore, stability and permanency would be beneficial for the children. *Id*. In light of NDD's 16 separate placements from January 2024 until August 2024, NDD's need for permanency is especially important. This fact weighed in favor of termination. *Id*. The advantages of grandmother's care, the children's well-being while in care, and the possibility of adoption also weighed in favor of termination. *In re White*, 303 Mich App at 714; *In re Olive/Metts*, 297 Mich App at 41-42. Although the children had some behavioral issues in care, as the trial court recognized, grandmother was able to provide "food, clothing, medical, and other remedial care," along with "love, affection, and guidance . . . ." And grandmother was open to the possibility of adopting the children, even though she expressed a preference for guardianship.[3]

But other factors weighed against termination of respondent's parental rights. There was evidence that the children had a bond with respondent. *In re Olive/Metts*, 297 Mich App at 41-42. NDD reported that he would be upset if he was not permitted to see respondent again and would want to visit respondent if she got out of prison.[4] MOK often asked grandmother when respondent was going to come home. The trial court found that respondent had a bond with the children. This bond weighed against termination. *Id*. Respondent's visitation history with children likewise weighed against termination. Respondent attended Zoom and phone calls, wrote letters, and her behavior with the children was appropriate and supportive.

Respondent further argues that the children's placement with a relative weighed against termination and that the trial court failed to expressly address the relative placement. We agree.

Under MCL 712A.19a(8)(a),[5] "the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination

---

[3] A guardianship "allows the child to keep a relationship with the parent when placement with the parent is not possible." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). A trial court is not permitted to implement a blanket policy disfavoring guardianship because of a child's young age, but instead must make an individualized determination regarding a child's best interests. *In re Timon*, 501 Mich 867, 867 (2017); *In re Olive/Metts*, 297 Mich App at 42.

[4] Both children would be adults if respondent was released on her earliest parole eligibility date.

[5] In *In re Olive/Metts*, 297 Mich App at 43, this Court referenced a previous version of the statute where the content of MCL 712A.19a(8)(a) was found in MCL 712A.19a(6)(a). Though now found in MCL 712A.19a(8)(a), language has not been substantively changed.

[is] in the children's best interests." *In re Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted). "[A] child's placement with relatives weighs against termination under" the relevant statute. *Id*. (quotation marks and citation omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

In this case, the trial court failed to explicitly address the children's relative placement. Evidence at the termination hearing established that MOK had been living with grandmother, a relative, since December 2023, and NDD had completed his QRTP and was scheduled to be placed in grandmother's care just days after the hearing. In addition, although every attorney referenced the relative placement in their closing arguments, the trial court's oral ruling and subsequent order failed to explicitly address it. The trial court's omission, specifically the lack of any discussion whether termination was appropriate in light of the children's placement with a relative, rendered the factual record inadequate to make a best-interest determination. *Id*. Therefore, a remand to the trial court is necessary to address this issue and render a new finding regarding the children's individualized best interests. *Id*.

Vacated and remanded for further consideration of the best-interest issue. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica